# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GULF SOUTH PIPELINE CO., LP**                          **CIVIL ACTION**

**VERSUS**                                                        **NO. 05-2481**

**DEVON ENERGY CORP.**                                    **SECTION "K"(5)**

## ORDER AND REASONS

Before the Court are a Motion for Summary and Declaratory Judgement filed by Devon Louisiana Corporation ("Devon") (Doc. 6) and Gulf South's Cross-Motion for Summary Judgment (Doc. 12).  Having heard oral argument on February 22, 2006, and having reviewed the pleadings, memoranda, exhibits, affidavits and the relevant law, the Court will deny both motions for the reasons that follow.

### Background

This case involves cross-motions for summary judgment concerning the lease of  900 square feet of an offshore platform located at Eugene 5l-B, on the Outer Continental Shelf ("OCS") off the coast of Louisiana.  The platform is owned by Devon  and a portion is leased by Gulf South Pipeline Co. LP ("Gulf South").

Gulf South  owns and operates an offshore gathering and transmission pipeline system which transports natural gas and condensate, among other materials, from various producers on the OCS to delivery points located in Louisiana.  Part of this broad-based gathering and transmission system includes a series of pipelines and appurtenances on the Eugene Island Block 51 Platform B ("Platform B") referred to as the "Facility".

On August 15, 2003, the Minerals Management Service ("MMS") issued a notice to Devon requiring it to comply with certain API standards.  Devon completed the assessment and

decided that Eugene Island 51-B Platform did not meet the criteria applied by the MMS due to corrosion and due to the cost of repairing the platform, vis-a-vis, the production in the field; Devon elected to abandon the platform to mitigate its costs.

Devon contends that Gulf South was required to remove its Facility at its sole cost and required it to do so within 60 days upon the written request of Devon, pursuant to its lease with Devon.

On November 25, 2003, Devon gave Gulf South notice of its intention to abandon the platform and advised Gulf South that its pipelines needed to be re-routed in order to clear the site and for it to dismantle its Facility.

On March 22, 2005, Devon provided Gulf South with a written notice for the removal of its facility from the platform within sixty days.  Then, on June 21, 2005, Gulf South filed this declaratory judgment.


**Basis of Devon's Motion**

Devon argues that it has a right to terminate the lease based on three primary arguments:

1)      Devon's first argument is that it has the right to terminate the lease under the Art.

        XI "Successors and Assigns" which states in relevant part:

Lessor shall have the right to assign this Agreement, without prior approval, and all rights, duties and responsibilities under it in connection with the sale, exchange or assignment of its interest in the lease for which the Facility is providing production services.  However, Lessor shall be obligated to provide Lessee written notice within sixty (60) days of such sale, exchange or assignment. This Lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. . . .

2

Devon contends that under this contract language, because it has the right to sell, exchange or assign its interest in the Lease without prior approval by Gulf South, provided Gulf South has been given 60 day notice, which it has, then , it can terminate the lease.

Furthermore, Devon contends that the jurisprudence allows a lessee to terminate a mineral lease when the cost incurred by the lessee outweighs the profit of production and that if the mineral lease is terminated, its sublease with Gulf South falls and cites *Wood v. Axis Energy Corp.*, 899 So.2d 138 (La. App. 3rd Cir. 2005) and *Brown v. M.I. Mayfield*, 488 So.2d 322 (La. App. 3rd Cir. 1986).  These cases are mineral lease cases where leases were terminated.  In *Wood*, the failure to produce in paying quantities was found to be the trigger the termination of a lease, and subsequent activity on the leasehold was found to be wrongful.  In *Brown,* sublessee rights under sublease ceased to exist once the oil company executed a quit claim deed in favor of owners and thereby released not only its retained rights in lease but also all full rights it had in lease including rights held by sublessee.

2)      Devon's Second Argument is that the lease is perpetual in nature.

 Devon argues that the following language renders the lease perpetual:

Article VIII-- "Term"

This Lease shall continue in full force and effect from the effective date hereof for as long as Lessee agrees with the Lessor to provide gas measurements services to Lessor or **for as long as the Lessee sees operating the Facility as economically justifiable.**. . .

Devon contends that this provision depends solely on the whim of the lessee and thus makes La. Civ. Code art.  2679 applicable.  That article provides:

3

If the term's duration depends **solely on the will of the lessor** or the lessee and the parties have not agreed on a maximum duration, the duration is determined in accordance with the following Article.

La. Civ. Code art. 2679 (emphasis added). Article 2680 of the Code then renders the lease a month-to-month lease and, thus, Devon contends that the lease should be cancelled. Devon argues that the term of the lease is dependent solely on the will of the obligee (Gulf South) and, therefore, under the Code article, its duration should be month to month.

3)   Devon's third argument centers on the Salvage provision of the lease.

Devon argues that the Salvage provisions of the lease, embodied in Art. IX, give it the right to cancellation. Article IX provides:

Lessee, as owner of the Facility installed on the leased Platform space, shall be responsible at its sole cost and risk for salvaging the Facility after a reasonable time subsequent to the discontinuance of the Facility for receiving gas on the Platform, **unless removal is sooner requested by Lessor in which case Lessee shall** be responsible at its sole cost and risk for salvaging the Facility within sixty (6) days following receipt of Lessor's written request for removal.

However, Gulf South contends this analysis fails to take into account the provisions for termination which define when the Lessor can request the Facility's removal sooner.

**Basis of Gulf South's Cross-Motion**

In its motion, Gulf South seeks an order from this Court declaring that:

(1)   the Lease between Gulf South and Devon is an ongoing Lease;

(2)   Gulf South's operation of the Facility is economically justifiable;

(3)   the Lease term provides that the Lease shall continue "for as long as the lessee [Gulf South] sees operating the Facility as economically justifiable;"

4

(4)     therefore, Devon is required to upgrade Platform B in accordance with the MMS

        requirements, including but not limited to MMS NTL No. 2203-G16;

Alternatively, Gulf South seeks declaratory judgment and partial summary judgment

from this Court declaring, based on Devon's failure to repair, Devon is in breach of the Lease,

and that  Devon is liable for the costs of relocating Gulf South's Facility, with said costs to be

determined as the relocation proceeds. Gulf South also reserves the right to seek additional

declaratory judgment and/or damages relative to any lost production revenues or other business

income loss suffered by Gulf South as a result of the need to relocate its facility.

Gulf South contends that La. Civ. Code art. 2046 providing that "when the words of the

contract are clear and explicit and lead to no absurd consequences, no further interpretation may

be made in search of the parties' intent."  It contends that Article VIII Term  of the lease

specifically sets forth that the lease term continues "for as long as [Gulf South] sees operating

the Facility as economically justifiable."  To that end, Gulf South provides the Court with

affidavits averring that it has made $500,000 in transportation of condensate, $1.25 million in the

transportation of natural gas and $2.1 million in "retained fuel" in the last year.

### Gulf South's Contention with Respect to the Perpetual Lease Argument

Gulf South counters each argument of Devon.  As to the "perpetual lease" argument, Gulf

South maintains that because there is an event defined–that is "as long as Gulf South agrees to

provide gas measurement services to Devon or for as long as Gulf South see operating the

Facility as economically justifiable," the lease has a term.  Gulf South relies on La. Civ. Code

art. 2678 which states:

> The lease shall be for a term.  Its duration may be agreed to by the parties or supplied by law.
>
> The term may be fixed or indeterminate. It is fixed when the parties agree that the lease will terminate at a designated date or upon the occurrence of a designated event.
> It is indeterminate in all other cases.

Comment (d) to the article states:
> A term is fixed when, pursuant to the agreement of the parties, its terminal point is marked in advance by a particular date on the calendar or by the occurrence of a future event that is bound to occur, albeit on a date not yet known (e.g. the death of the lessee).

Revision Comments–2004.  As such, the date upon which the facility will no longer be economically justifiable will occur.  Gulf State notes that it is not likely or possible that this facility would be viable forever.

In addition, Gulf States contends that public policy dictates a finding that the Lease's term is enforceable because the Facility provides significant and important natural gas and condensate transportation services to various offshore producers, thereby providing the citizens of Louisiana with natural gas and related products. Gulf States also notes that Devon has the wherewithal to perform the repairs required.

Gulf States further maintains that as Devon drafted the contract,  if there are ambiguities, which Gulf States reiterates that it does not see, any ambiguities or interpretations are to be construed against Devon.  La. Civ. Code art.  2057 states, "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against he party who furnished such text."  See *Terra Cotta's Café, LLC v. Poole,* 904 So.2d 918 (La. App. 3rd Cir. 2005); *Louisiana Real Estate Commissioner v. Butler* , 899 So.2d 151 (La. App. 3rd Cir. 2005). Furthermore, La. Civ. Code art. 2057  provides:

In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.

Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a  manner favorable to the other party whether obligee or obligor.

### Gulf South's Contention with Respect to the Successor and Assigns Argument

With respect to Devon's argument based on Article XI–Successors, Gulf States likewise rejects that the right to sell, exchange or assign gives the right for Devon to dismantle the platform and ignore the term of the lease.  Likewise, it maintains that the case law cited–*Wall and Brown*–are mineral cases and have no applicability here.

### Gulf South's Contention with Respect to the Salvage Provision Argument

As to the Article IX Salvage provision, Gulf South argues that it must be read in light of the term provisions and only triggers with the discontinuance of the use of Gulf South's Facility. For this proposition, Gulf States relies  on La. Civ. Code art. 2050, "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. "  Gulf South maintains that the provisions means that if the Facility were no longer economically justifiable and Gulf South had therefore discontinued receiving gas, then under the first part of the salvage provision, Gulf South would have a "reasonable time" to remove the Facility upon request from Devon.  If Gulf South felt that 180 days was a "reasonable time" for such removal, but Devon disagreed Devon could nonetheless request removal sooner, in which case the 60 day provision would be triggered.

7

Gulf States cites to *Lloyd v. Merit Loan Co. of Shreveport*, 245 So.2d 427 (La App. 2nd Cir. 1971). There a lessor sued for past due rent, which a lessee maintained it was not liable for because of a provision in the lease that gave the lessee the right to terminate the lease "if during the term of this lease . . . , any law, decision, regulation or condition exits, continues or is made effectual in this City, State or Nation, which in the judgment of the lessee" adversely affected the profitability of the business. The Court there said that mere economic conditions were not enough.

In the instant case, Gulf South reiterates that there is a provision, Article V, that obligates Devon to maintain its Platform B in line with government regulations which would include the MMS requirements to meet API standards. It notes that the directive at issue–MMS NTL No. 2003-G16 does not provide for abandonment of the field and dismantling of Platform B on its face. Even though MMS and Devon may have agreed to the dismantling, this Gulf South maintains does not erase the fact that the Lease has not expired. With these arguments and facts in mind, the Court will now rule.

**Legal Analysis of Motions**

**Standard for Summary Judgment**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.   "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment.  Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id.*

When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits.  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact.  *Anderson*, 477 U.S. at 255. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed."  *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).


**Rules for Contract Interpretation**

9

A contract constitutes the law between the parties. *Pareti v. Sentry Indemnity Co.,* 536 So.2d 417, 420 (La.1988). Whether the contract is ambiguous is a question of law. Because of the unique character of the issues presented, it is important to review Louisiana's Civilian methodology with respect to interpreting its law.  The Louisiana Civil Code provides the source and framework by which this Court must review this contract.

The tenets of Louisiana contract interpretation under the Code were succinctly set forth by the 5th Circuit in  *Texas Eastern Transmission Corp. v. Amerada Hess Corp.,* 145 F.3d 737 (5th Cir.1998).  The Court stated:

> Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court. *See Rutgers, State Univ. v. Martin Woodlands Gas Co.,* 974 F.2d 659, 661 (5th Cir.1992). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code Ann. art. 2046 (West 1995). In addition, a contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight. *See Lloyds of London v. Transcontinental Gas Pipe Line Corp.,* 101 F.3d 425, 429 (5th Cir.1996); *Rutgers,* 974 F.2d at 662. This court has stated that when the contract is not ambiguous, it has no authority to reach beyond the four corners of the document. *See Huggs, Inc. v. LPC Energy, Inc.,* 889 F.2d 649, 653 (5th Cir.1989).
>
> On the other hand, a contract is ambiguous, under Louisiana law, "when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *See Lloyds of London,* 101 F.3d at 429. Under these rules of construction, "[e]ach provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code Ann. art. 2050 (West 1987). Contract provisions susceptible to different meanings should be interpreted "to avoid neutralizing or ignoring any of them or treating them as surplusage," *Lambert v. Maryland Cas. Co.,* 418 So.2d 553, 559-60 (La.1982), and "to preserve validity [of the contract]," *Gibbs Constr. Co. v. Thomas,* 500 So.2d 764, 769 (La .1987).     Louisiana courts will not interpret a contract in a way that leads to unreasonable consequences or inequitable or absurd results even when the words used in the contract are fairly explicit. *See Makofsky v. Cunningham,* 576 F.2d 1223, 1229 (5th Cir.1978). "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the

contract, and of other contracts of a like nature between the same parties."
La.Civ.Code Ann. art. 2053 (West 1987).

*Texas Eastern Transmission Corp. v. Amerada Hess Corp.,* 145 F.3d at 741-42.

### Devon's Motion for Summary Judgment

Bearing these concepts in mind, the Court finds that the contract in question indeed is

unambiguous.  Article VIII –Term provides:

> This Lease shall continue in full force and effect from the effective date hereof for
> as long as Lessee agrees with the Lessor to provide gas measurements services to
> Lessor or **for as long as the Lessee sees operating the Facility as economically
> justifiable.**. . .

At oral argument, the Court learned that Gulf South continues to provide Devon gas

measurement services on this platform.  In addition, Gulf South has presented unrefuted

affidavits demonstrating that operating the Facility as economically justifiable.  As such, it

would appear that the lease is in full force and effect.  However, it is unclear what effect would

the cessation of Devon having gas to measure would have on the terms of this lease.  Indeed, at

oral argument, it came to light that there are two leases which Devon has with MMS–one for the

platform and one for the mineral rights.  As such, there are questions of fact which preclude

summary judgment on this issue.

Nonetheless, the Court rejects Devon's contention that the lease is perpetual in nature.

This lease is not one which depends solely on the "whim" of the lessee for termination.  This

provision does not contemplate an event which depends entirely on Gulf South's will.  While

there is no specific provision in the lease articles of the Code, the general obligation code articles

provide guidance.

11

In the general obligation provisions, La. Civ. Code art. 1770 deals with the situation where a condition is dependent on the whim or the will of the obligor.  The article provides:

> A suspensive condition that depends solely on the whim of the obligor makes the obligation null.
>
> A resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith.

La. Civ. Code art. 1770.   As the condition at issue is one that was immediately enforced but would come to an end when the uncertain event occurred, *see* La. Civ. Code art. 1767, the contested language is a resolutory condition.  In the Revision Comments–1984, it states:

> (c) A condition involving an event left to the obligee's whim does not make the obligation null. See C.C. Arts. 2034 and 2036 (1870); see also S. Gumbel Realty and Securities Co., Inc. v. Levy, 156 So. 70 (La.App.Orl.1934).
> (d) An event which is left to the obligor's whim is one whose occurrence depends entirely on his will, such as his wishing or not wishing something. See 1 Pothier, A Treatise on the Law of Obligations or Contracts 114-115 (Evans translation 1806). **An event is not left to an obligor's whim when it is one that he may or may not bring about after a considered weighing of interests, such as his entering a contract with a third party. See C.C. Art. 2035 (1870); Long v. Foster & Associates, Inc., 242 La. 295, 136 So.2d 48 (1961); Humble Oil & Refining Co. v. Guillory et al., 212 La. 646, 33 So.2d 182 (1946).**

La. Civ. Code art. 1770,  Comments–1984 (c) and (d).  Thus, as the lease provision is not one terminable "at will."

As to the issue of whether Devon or Gulf South is the obligor,  La. Civ. Code art. 1756 defines obligations as:

> An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing or not doing something.

Furthermore, in this bilateral contract, the parties are reciprocally obligors and obligees as noted in the Revision Comments of 1984.

Likewise, as the contract must be read as a whole, and there is a specific provision determining the term of the lease, the salvage provisions cannot be triggered without the lease terminating under Article VIII.  The Salvage Provisions cannot provide a method by which to override the clearly set forth term of the lease.

Finally, Art. XI, the "Successor and Assigns" provision is not triggered because this provision clearly contemplates the transfer of Devon's obligations hereunder to another party, not the cessation of the obligations.  Perhaps, if the underlying mineral lease has been rescinded, there might be a basis for claiming that this lease is no longer enforceable; however, the those facts are not clear at this juncture.  Thus, Devon's motion must be denied.


**Gulf South's Cross-motion for Summary Judgment**

With respect to Gulf South's motion, the Court finds that there are questions of material fact which preclude the  granting of  thereof.   While it would appear that the lease is viable and the operation of the Facility as defined under the lease is economically justifiable, whether the underlying  mineral lease has been extinguished by Devon is unclear.  If it has been, then the viability of the lease may be called into question based on *Wood* and *Brown* discussed *supra.*

The Court also takes cognizance of Art. V–Government Regulation portion of the Lease which provides:

> Each of the parties hereto agree that they shall at all times endeavor to maintain their respective facilities and conduct their operations thereon in accordance with all applicable valid laws, orders, rules, and regulations of any duly constituted governmental or other body or official having jurisdiction.  Further, this lease

13

> shall be subject to all present and future valid laws, orders, rules and regulations
> of the federal government or the state in which these premises are situated, having
> jurisdiction.  If any provision is found to conflict with said laws, orders, rules and
> regulations, such provision shall be appropriately modified to adhere to said laws,
> orders, rules and regulations.

While this paragraph may indeed require Devon to meet the criteria as delineated in the MMS

NTL No. 2003-G16 issued on  August 15, 2003, the facts and circumstances surrounding the

eventual agreement to "decommission" the platform and the effect of such an agreement with

respect to the lease term is unclear. As previously noted, at oral argument the Court learned that

the platform lease between Devon and MMS is separate from the mineral lease for Eugene Block

51.  In order to adjudicate this dispute a fuller understanding of the underlying leases is

necessary.   As such, the Court finds that there are questions of fact in this regard.

In addition, the Court finds that under the provisions of La. Civ. Code art. 2715, this kind

of relief–that is requiring Devon to restore the platform–may be unavailable.  That article

provides:

> If, without the  fault of the lessee, the thing is partially destroyed, lost, or
> expropriated, or its use is otherwise substantially impaired, the lessee may ,
> according to the circumstances of both parties, obtain a diminution of the rent or
> dissolution of the lease, whichever is more appropriate under the circumstances.
> If the lessor was at fault, the lessee may also demand damages.

 Accordingly,

**IT IS ORDERED** that  Devon's Motion for Summary Judgment (Doc. 6) and  Gulf

South's Motion for Summary Judgment (Doc. 12) are  **DENIED.**

New Orleans, Louisiana, this   2nd   day of March, 2006.

_____

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**

14